The prior Opinion and Award of the Full Commission filed 6 August 1998 is incorporated herein by reference. Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all times.
3. Wausau Insurance Company is the carrier on the risk.
4. The Commission takes judicial notice of the Forms 18, 19 and 21.
5. The Agreement for Final Compromise Settlement and Release and a packet of medical records have been stipulated into evidence.
6. A letter to employee-plaintiff from Pfizer concerning long-term disability benefits of Connecticut Life Insurance Company was admitted into evidence.
7. Summary of employee-plaintiffs FICA earnings statement for the years 1972 through 1991 was admitted into evidence.
8. The sole issue upon remand was whether the Agreement for Final Compromise Settlement and Release should be set aside.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Holmes, plaintiff was 43 years old. Plaintiff has a ninth grade education, as well as a GED, and has taken computer and business classes at Brunswick Community College.
2. On or about 17 June 1990, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with employer-defendant. Plaintiff sustained a back injury while he was lifting a patient out of an ambulance.
3. As a result of his injury by accident, plaintiff underwent two surgeries performed by Dr. Raymond Sattler.
4. Plaintiff reached maximum medical improvement on 31 July 1990, and was released by Dr. Sattler with a 25 pound lifting restriction.
5. On or about 1 August 1990, plaintiff discussed the possibility of returning to work with Herbert Metcalfe and the plant manager, and informed them of his restrictions.
6. On or about 2 August 1990, plaintiff again met with Mr. Metcalfe and the plant manager. The plant manager and Mr. Metcalfe, director of human resources for the Southport plant of employer-defendant, informed plaintiff that employer-defendant did not have work within his restrictions at the plant.
7. Plaintiff elected to accept long term disability benefits and signed the paperwork pertaining to receipt of said benefits.
8. Thereafter, plaintiff accepted an offer to settle his workers compensation claim for $20,000.00 by an Agreement for Final Compromise Settlement and Release. Plaintiff read this Agreement, signed it, and accepted the check resulting from the approval of said Agreement.
9. Connecticut General Insurance Company prorated its payments of long term disability benefits as contained in the Agreement, such that plaintiff did not receive long term disability benefits again until 1991.
10. Plaintiff was satisfied with the amount and terms of the workers compensation settlement. He was upset that the long term disability carrier considered the workers compensation settlement to be a credit against long term disability owed.
11. Plaintiff testified at the hearing before Deputy Commissioner Holmes that Mr. Metcalfe told him that the $20,000 would be given to him in a lump sum and could be utilized for emergency medical care in the future. Plaintiff further alleged that Mr. Metcalfe told him that he could put the $20,000 received from the settlement agreement in the bank for future medical treatment and that he could use the long-term disability benefits to cover the costs of daily living.
12. Plaintiff was not represented by an attorney when he signed the Agreement for Final Compromise Settlement and Release. Plaintiff received the $20,000 in a lump sum. However, plaintiff discovered that he needed to use this money for medical expenses and daily living because his workers compensation settlement amount was treated as an offset against his long term disability benefits.
13. In the original hearing of this matter, a deposition of Mr. Metcalfe was approved by Deputy Commissioner Ed Garner, but was not taken. The Full Commission remanded this case for a hearing before Deputy Commissioner Holmes to receive additional evidence, including the testimony of Mr. Metcalfe, and to determine whether any misrepresentation or fraud could be determined after receipt of this additional evidence.
14. The evidence presented before Deputy Commissioner Holmes revealed that plaintiffs average annual wage was $38,220 at all relevant times. At the time the parties entered into the Form 21 Agreement and the "Clincher Agreement which recited plaintiffs average weekly wage as $523.60, both parties were operating under a mistake of law as to plaintiffs average weekly wage.
15. Herbert Metcalfe was eventually deposed in this matter and he denied telling plaintiff that he could put the $20,000 lump sum payment in the bank and live off of his long term benefits.
16. Herbert Metcalfe did inform plaintiff that his short term disability was ending and that plaintiff needed to apply for long term disability and for Social Security benefits. Mr. Metcalfe also provided plaintiff with a book regarding long term benefits.
17. There is no clear and convincing evidence that plaintiffs testimony is credible. The Full Commission finds that Mr. Metcalfe did not inform plaintiff that he could put the $20,000 lump sum in the bank and use the long term benefits for daily living. Further, there is no evidence that Mr. Metcalfe concealed the fact that the long term disability carrier would take a credit for any other workers compensation benefits paid to plaintiff.
18. Plaintiff has not proven by the greater weight of the evidence that his Agreement for Final Compromise Settlement and Release should be set aside based on error due to fraud, misrepresentation, undue influence or abuse of a confidential relationship on the part of defendants.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The Full Commission has previously concluded as a matter of law that the calculation of plaintiffs average weekly wage involved a question of law and therefore did not provide a basis for rescinding or setting aside the Agreement for Final Compromise Settlement and Release in question. During the remand of this matter, plaintiff failed to prove by the greater weight of the evidence that his decision to execute the Agreement for Final Compromise Settlement and Release was error due to fraud, misrepresentation, undue influence, or abuse of a confidential relationship on the part of defendants. Plaintiff has proven that there was a mutual mistake in the calculation of his average weekly wage which he agreed to on both the Form 21 Agreement and Agreement for Final Compromise Settlement and Release. However, such a mutual mistake on a question of law is not grounds for setting aside a Compromise Settlement Agreement. Accordingly, there is no basis to set aside the Agreement.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs request that the Agreement for Final Compromise Settlement and Release be rescinded and that his claim be reopened is hereby DENIED. Since there is insufficient evidence before the Commission to rescind said Agreement, the Agreement shall remain in full force and effect.
2. Each side shall pay its own costs.
This the day of January, 2001.
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ THOMAS J. BOLCH COMMISSIONER
 S/___________________ LAURA K. MAVRETIC COMMISSIONER